

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2002

# Jimmy Johnson v. Atty Gen USA

Precedential or Non-Precedential:

Docket No. 01-1331

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Jimmy Johnson v. Atty Gen USA" (2002). *2002 Decisions.* Paper 280.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 16, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-1331

JIMMY JOHNSON,
        Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A73 149 183)

Argued November 7, 2001

Before: BECKER, Chief Judge, and McKEE
and RENDELL, Circuit Judges

(Filed April 16, 2002)

        Visuvanthan Rudrakumaran
         [ARGUED]
        Suite 2309
        875 Avenue of the Americas
        New York, NY 10001
        Counsel for Petitioner
        Jimmy Johnson


        William C. Minick [ARGUED]
        Michael P. Lindemann
        Christopher C. Fuller

        Alison M. Igoe
        Office of Immigration Litigation
        Civil Division, Department of Justice
        P. O. Box 878
        Ben Franklin Station
        Washington, DC 20044
        Counsel for Respondent

OPINION OF THE COURT

RENDELL, Circuit Judge.

Jimmy Johnson petitions for review of a Board of

Immigration Appeals ("BIA" or "Board") order reversing a
grant of asylum and withholding of deportation based on
changed country conditions.

The BIA held that the Immigration Judge did not have jurisdiction over these claims at the time he considered

Johnson's application for relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT")[1] because the case had been reopened and remanded for the "sole purpose" of considering the CAT claim. The question before us is whether on remand the Immigration Judge's jurisdiction was limited to the CAT issue. For the reasons below, we conclude that, in deciding that it was limited, the Board departed without reasonable explanation from its own policy that it established in Matter of Patel , 16 I. & N. Dec.

600 (BIA 1978). Accordingly, the Petition for Review will be granted and we will vacate the Board's order and remand for further proceedings consistent with this opinion.

_____

1. G.A. Res. 39/46 (annex), U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).

I.

When Johnson entered the United States from Liberia in 1994 without a valid visa or travel documents, he was placed in exclusion proceedings and taken into custody by the Immigration and Naturalization Service ("INS"). His initial application for asylum under Immigration and Naturalization Act ("INA") S 208, 8 U.S.C. S 1158, and withholding of deportation under former INA S 243(h), 8 U.S.C. S 1253(h) (1995), was denied and he was ordered excluded. The Board affirmed on appeal.

Johnson then filed a motion with the Board to reopen and/or reconsider asylum and withholding of deportation in 1996. In a published opinion, the Board denied the motion as untimely, holding that the motion to reconsider was more than 60 days late, that the motion to reopen was 2 days late, and that a motion is "filed" when it is received rather than when an applicant in custody sends it. See In re J-J-, 21 I. & N. Dec. 976 (BIA 1997). The Board considered the exception to the timeliness requirements for motions to apply for asylum based on changed circumstances in the applicant's country of nationality, see 8 C.F.R. S 3.2(c)(3)(ii), but concluded that the exception did not apply because Johnson failed to provide material evidence of changed conditions that was unavailable at prior hearings. See In re J-J-, 21 I. & N. Dec. at 981-82.

In 1999, Johnson filed a motion with the Board to reopen for consideration of relief under CAT, which the Board granted. The Board's order provided that

    [W]e . . . remand this matter to the Immigration Court
    for consideration of the respondent's claim pursuant to

[CAT] regulations.

. . .

> FURTHER ORDER: The record is remanded to the
> Immigration Judge for further proceedings consistent
> with the foregoing opinion and for the entry of a new
> decision.

The effect of this remand order is at issue here.

While the case was on remand, Johnson made a written
motion before the Immigration Judge urging the court"to

3

consider the respondent's eligibility for asylum in the
proceedings based on changed country conditions." The
Immigration Judge considered this motion as well as the
motion to withhold deportation under CAT, ultimately
granting both.

In his decision, the Immigration Judge addressed
whether his jurisdiction was limited to the CAT claim. While
acknowledging that the Board and the Supreme Court have
set a high standard for reopening immigration proceedings
because of the interest in finality, see, e.g. , INS v. Abudu,
485 U.S. 94, 107 (1988); In re A-G-, 19 I. & N. Dec. 502,
503-04 (BIA 1987), he reasoned that the decision was no
longer final once the case had been reopened, so that this
interest was not implicated. Moreover, he made the point --
uncontested by the INS -- that if Johnson had become
eligible for adjustment of status in the meantime, that
matter could have been entertained by him on remand.
This, he stated, supported his view that "issues besides
that for which the Board specifically reopened the case"
could be heard on remand. He found that application of
this principle was particularly appropriate in these
circumstances, where so much of the evidence of the CAT
claim was relevant to the asylum claim as well.

The INS appealed the Immigration Judge's decision to the
Board, which affirmed the grant of withholding relief under
CAT, but vacated the grant of asylum and withholding of
deportation. The Board did not address the merits of the
asylum claim, but rather vacated on the ground that the
Immigration Judge had lacked jurisdiction to consider the
motion because the Board's remand referred jurisdiction
back to the Immigration Judge only as to the CAT motion.

In its opinion, the Board began by citing the general rule
that "a remand, unless the Board qualifies or limits it for a
specific purpose, is effective for the stated purpose and for
consideration of any and all matters which the Immigration
Judge deems appropriate in the exercise of his
administrative discretion or which are brought to his
attention in compliance with the appropriate regulations."
Citing Matter of Patel, 16 I. & N. Dec. 600 (BIA 1978))
(Board's emphasis). It then pointed out that the standards

to reopen for relief under CAT are more easily satisfied than those to reopen for other purposes.

Finally, the Board looked to the background regulations and the relief sought in Johnson's motion to reopen for consideration under CAT, reasoning that both indicated that "the applicant's motion was filed to pursue this limited form of relief and, thus, was granted and remanded to the Immigration Judge for the limited purpose of entertaining his application for relief pursuant to [CAT]." Specifically, the Board pointed to the regulation providing that an alien under final order of exclusion "may move to reopen proceedings for the sole purpose of seeking" withholding of removal under CAT. 8 C.F.R. S 208.18(b)(2). 2 For all of these reasons, it concluded that the Immigration Judge's jurisdiction on remand was limited to the CAT claim.

Johnson filed a timely appeal of the portion of the Board's order vacating the Immigration Judge's grant of asylum and withholding of deportation.

II.

We have jurisdiction under INA S 106, 8 U.S.C. S 1105a(a), as modified by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").3 While we will often defer to agency interpretations in the immigration context, see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984); Abdille v. Ashcroft, 242 F.3d 477, 484-85 (3d Cir. 2001) (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999)), this case concerns the scope of jurisdiction of the Immigration Judge and the BIA as it has been interpreted in the BIA's own precedent. The parties and the Board agree that it rests essentially on one decision -- Matter of Patel, 16 I. & N. Dec. 600 (BIA

_____

2. This provision applies only to aliens like Johnson who were "ordered removed, or whose removal orders became final, before March 22, 1999." 8 C.F.R. S 208.18(b)(2).

3. We note that we do not need to decide which rules apply because this matter was reviewable under the old rules, see  INA S 106, and is not in any of the categories affected by the IIRIRA's transitional or permanent rules, see IIRIRA S 309(c)(4); INAS 242, 8 U.S.C. S 1252.

1978). Immigration regulations provide that Patel, because it is a published opinion, "shall serve as precedent[ ] in all proceedings involving the same issue or issues." 8 C.F.R. S 3.1(g). The issue before us, therefore, is whether the Board departed from its own precedent.

Although an agency can change or adapt its policies, it

acts arbitrarily if it departs from its established precedents without "announcing a principled reason" for the departure. Fertilizer Inst. v. Browner, 163 F.3d 774, 778 (3d Cir. 1998) (noting the well-established rule that an agency can depart from precedent only with explanation); see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41-43 (1983); Chisholm v. Defense Logistics Agency, 656 F.2d 42, 47 (3d Cir. 1981) (agencies must follow, distinguish, or overrule their own precedent). Numerous courts have applied this principle in the immigration context,4 as we do here. Further, if it departs from an announced rule without explanation or an "avowed alteration," such action could be viewed as "arbitrary, capricious, [or] an abuse of discretion." INS v. Yang, 519 U.S. 26, 32 (1996). Here, the Board has not announced an alteration of the policy set forth in Patel. Thus, if the Board did in fact depart from Patel, it acted arbitrarily and we should overturn its ruling.

III.

We begin our analysis with a discussion of the Board's opinion in Matter of Patel, 16 I. & N. Dec. 600 (BIA 1978), in which the Board established the standard for the scope

_____

4. See Salameda v. INS, 70 F.3d 447, 450 (7th Cir. 1995) ("An agency may not abandon an interpretation without an explanation . . . . Agencies do not have the same freedom as courts to change direction without acknowledging and justifying the change."); Davila-Bardales v. INS, 27 F.3d 1, 5 (1st Cir. 1994) (requiring the BIA to "confront the issue squarely and explain why the departure is reasonable" when it departs from its own precedents); Israel v. INS, 785 F.2d 738, 740 (9th Cir. 1986) (the BIA acts arbitrarily when it disregards its own precedents and policies without "reasonable explanation"); Moret v. Karn, 746 F.2d 989, 992 (3d Cir. 1984) (the INS abused its discretion where it failed to follow its own internal procedures).

6

of remand orders in immigration proceedings. While few cases or Board decisions elaborate on Patel's standard, and its language is often quoted without elaboration, 5 it is widely acknowledged to govern this situation. This is not disputed here: the parties and the Board simply offer competing interpretations of the standard the case sets forth.

Before the Board in Patel was a motion to reopen proceedings so that the respondent could apply for relief under S 244(a)(1) of the INA, 8 U.S.C. S 1254(a)(1). In a two-page decision, the Board found that it lacked jurisdiction to decide this motion because it had previously reopened the case for consideration of respondent's rights under asylum provisions and had remanded the case. Accordingly, the Immigration Judge, and not the Board, had jurisdiction.6 Patel set forth the relevant test as follows:

        [W]hen the Board remands a case to an immigration

judge for further proceedings, it divests itself of jurisdiction of that case unless jurisdiction is expressly retained. Further, when this is done, unless the Board qualifies or limits the remand for a specific purpose, the remand is effective for the stated purpose and for consideration of any and all matters which the Service officer deems appropriate in the exercise of his administrative discretion or which are brought to his attention in compliance with the appropriate regulations.

Id. at 601.

Under this formulation, the Board will have no continuing jurisdiction if remand is ordered, unless the

_____

5. E.g., In re L-V-K-, Int. Dec. 3409, 1999 WL 607159 (BIA Aug. 10, 1999) (dissent) (citing Patel for the proposition that "[o]nce a case is remanded, such a remand, unless specifically limited, is for any appropriate purpose"); CHARLES GORDON ET AL., 1 IMMIGRATION LAW AND PROCEDURE S 3.05[5][b], at 3-55 (Dec. 2000) (citing Patel).

6. In the same decision, the Board denied another respondent's motion to reopen for relief under S 244 because he failed to make out a prima facie case of eligibility, but this portion of the decision is not relevant here.

7

Board has "expressly retained" jurisdiction. And, even if it has expressly retained jurisdiction,7 the Immigration Judge on remand can consider the stated purpose and  other appropriate matters unless the remand is qualified or limited to a specific purpose. That is, for the Board to retain jurisdiction over all but a narrow issue, generally it must do two things in the text of its remand order: expressly retain jurisdiction, and limit the remand to a specific purpose. The Board did not do either here.

1. Express retention of jurisdiction

The government argues that the Board limited the Immigration Judge's jurisdiction by stating that"we . . . remand this matter to the Immigration Court for consideration of the respondent's claim pursuant to[CAT] regulations" and citing the relevant regulations. It proposes that this same language both expressly retained Board jurisdiction over everything but Johnson's CAT claims, and qualified and limited the remand to this specific purpose. By reaching this conclusion without considering separately the "express retention" and "qualifying or limiting" requirements, it ignores the fact that Patel implies that there are at least some circumstances in which language could expressly retain jurisdiction without qualifying or limiting the remand. Otherwise, Patel's second sentence -- "Further, when this is done . . . ." -- would be superfluous. Accordingly, we examine each of Patel's requirements in turn, beginning with its statement that the Board generally

no longer has jurisdiction when it has remanded a case,
except when it "expressly retains" jurisdiction over it.

Patel itself does not elaborate on the concept of "express
retention" of jurisdiction. After setting forth the test, it
simply states that the remand order at issue was"not
limited or qualified," bypassing analysis of"express
retention." And, there is no caselaw discussing how we
should interpret this language in this context. We thus turn

_____

7. Linguistically Patel's phrase "when this is done" could refer either to
"when the case is remanded" or to "when jurisdiction is expressly
retained," but logically it refers to the latter. If the Board simply remands
without retaining any jurisdiction, it makes no sense to define the scope
of its un-retained jurisdiction.

8

for guidance to the common definition of "express" as
"explicit," in contrast to implicit or inferred. Black's Law
Dictionary, for instance, defines "express" as "[c]lear;
definite; explicit; plain . . . . Made known distinctly and
explicitly, and not left to inference." BLACK'S LAW DICTIONARY
580 (6th ed. 1990). Other dictionaries give substantially
similar definitions. See, e.g., WEBSTER'S THIRD NEW
INTERNATIONAL DICTIONARY 803 (1993) (defining "express" as
"directly and distinctly stated or expressed rather than
implied or left to inference . . . definite, clear, explicit,
unmistakable").

The most obvious way for a tribunal to "expressly retain
jurisdiction" is by stating that it is doing precisely that. In
In re Prudential Ins. Co. of Am. Sales Practice Litig., 261
F.3d 355, 367 (3d Cir. 2001), we characterized the district
court as having "expressly retained exclusive jurisdiction"
over certain settlement proceedings where its order simply
stated that it "retain[ed] exclusive jurisdiction as to all
matters relating to [settlement] administration." In re
Prudential Ins. Co. of Am. Sales Practice Litig., 962 F. Supp.
450, 566 P 10 (D.N.J. 1997). And in other situations where
the adjective "express" is used, we have viewed it as
requiring an actual, stated reference or mention. In
Berckeley Inv. Group, Ltd. v. Colkitt, 259 F.3d 135, 141 (3d
Cir. 2001), for instance, we found no "express
determination" that there was no just reason for delay
where the district court's order did not use the phrase 'no
just cause for delay' or any similar statement.

Here, the remand order did not state that the Board
retained jurisdiction, nor did it make any reference at all to
the Board's jurisdiction. In this context, we see no reason
to interpret "express" in a way other than as it is commonly
understood. Given Patel, we cannot conclude that the order
on its face expressly retained jurisdiction.

2. Qualification or limitation to a specific purpose

Even had the Board expressly retained jurisdiction, our

inquiry would not end there. Patel then tells us: "[f]urther, when this is done, unless the Board qualifies or limits the remand for a specific purpose, the remand is effective for the stated purpose and for consideration of any and all

matters . . . ." It, thus, provides for two possible scenarios. If the Board "qualifie[d] or limit[ed] the remand for a specific purpose," then the Immigration Judge would be limited to that purpose. But if the Board did not include such qualifications or limitations, then the Immigration Judge could appropriately consider the stated purpose and "any and all matters" deemed appropriate or brought under relevant regulations.

Clearly, here, the Board did state a purpose -- consideration of Johnson's CAT claims. But the language of Patel just quoted contemplates that an order can articulate a purpose without being qualified or limited. The general rule that a remand encompasses the stated purpose and other matters clearly assumes and anticipates the normal practice of the Board, namely a remand for a stated purpose. Under Patel, the Immigration Judge's jurisdiction is narrowed only when the remand order is qualified or limited, which, given the structure of Patel's sentence, must be more than a statement of purpose alone.

Although the Board stated a purpose, it did not limit or qualify the remand, so the Immigration Judge could then hear a wide range of matters. The government urges us to find that "[b]y explicitly stating that it was remanding the petitioner's case for consideration pursuant to regulations that govern claims under the Convention Against Torture only, the Board specifically limited and qualified the basis of its remand." The difficulty with this argument is that Patel assumes a purpose will be "stated," as it was, but none of the limiting language that the government points to in its papers -- "only" and "sole and express purpose" -- or that the Board points to in its decision -- "sole purpose" -- appears in the order. Without such limiting language, the order contains nothing more than a stated purpose.

We note, further, that the remand at issue here is similar to the one in Patel, which the Board found was not qualified or limited, in that it refers to a specific regulatory provision. In Patel, the Board had previously ordered reopening in view of respondent's rights under a particular asylum provision, Patel, 16 I. & N. Dec. at 601, whereas here the order referred to the CAT regulations. This

statement of a purpose was not a limitation in Patel, so it similarly should not be in this situation.

3. The scope of the Immigration Judge's jurisdiction

Because the Board's order stated a purpose but did not limit remand to that purpose, Patel instructs that the Immigration Judge could consider Johnson's CAT claims and "any and all matters which [the Immigration Judge] deem[ed] appropriate in the exercise of his administrative discretion or which [were] brought to his attention in compliance with the appropriate regulations." Patel, 16 I. & N. at 601 (emphasis added). For the reasons below, we believe that the asylum claim was the type of matter that Patel contemplated an Immigration Judge would hear in these circumstances.

In its opinion, the Board focused on the second part of Patel's sentence, which refers to the "appropriate regulations." Not only did the Board emphasize the phrase when quoting Patel's key passage, but it also characterized Patel as "requiring purposes for remand to be in compliance with the appropriate regulation." But this is not what Patel says. Instead, the phrase refers to the manner of bringing matters to the Immigration Judge's attention, and-- particularly with its use of "any and all"-- seems to be an expansive, not a narrowing, phrase.

The Board's ruling here might also be viewed as opining that the motion was not brought in compliance with 8 C.F.R. S 208.18(b)(2), the regulation that allows motions "to reopen proceedings for the sole purpose of seeking" withholding of removal under CAT. But if we were to concede that use of the word "sole" in this regulation was sufficient to restrict the Immigration Judge's jurisdiction on remand, that would be entirely inconsistent with Patel. The Board did not address this issue, but seems to have either misread Patel or decided that somehow the regulation is a jurisdictional limitation that trumps Patel. The latter seems unlikely because the Board does rely on Patel  as well.

The Board also pointed out in its opinion that Johnson's motion for asylum relief would have been time barred and would have exceeded the permissible number of motions if it had been deemed a motion to reconsider the Board's prior

11

decision. 8 C.F.R. S 3.2(b)(2) (establishing a filing deadline for motions to reconsider and limiting them to one per decision). This argument was not pursued on appeal, but even if it had been, it is not relevant at this stage of the proceedings. These time and numerical limitations do not apply to motions to reopen based on changed country circumstances where the movant shows evidence of changed conditions that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. SS 3.23(b)(3), 3.2(c)(3)(ii).8 The Board did not reach the issue of whether this standard was appropriately met or applied because it based its conclusion on the scope of the Immigration Judge's jurisdiction, as defined by the remand order.

The government similarly pointed out that this was

Johnson's second motion to reopen for consideration of asylum based on changed country conditions, and that the Board had denied the previous one. See In re J-J-, 21 I. & N. Dec. 976 (BIA 1997). But its argument that Johnson was impermissibly readjudicating his asylum claim is not addressed to the Immigration Judge's jurisdiction on remand, and, even if it were, the regulations specifically permit "readjudication" when the requirements for showing changed country conditions are met. See 8 C.F.R. SS 3.23(b)(3), 3.2(c)(3)(ii). None of this amounts to a regulatory prohibition against the consideration of asylum based on changed country conditions.

Patel states that the Immigration Judge may hear such matters "or" those deemed appropriate in the exercise of the judge's discretion. Presumably this discretion has limits. The Board's decision in In re J-J-, 21 I. & N. Dec. 976 (BIA 1997), for instance, noted that the Board's power to reopen cases on its own motion was "not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations." Id. at 984. Assuming that a similar standard would apply where the Immigration Judge's

_____

8. Motions to reopen based on changed country conditions are an exception to the rule that motions to reopen are normally limited to one per alien and must be filed no later than 90 days after the final administrative decision. See 8 C.F.R. S 3.2(c)(2).

discretion, rather than the Board's discretion, is at issue, we do not view the Immigration Judge's consideration of Johnson's motion to run afoul of the regulations. Nor do we view his addressing this issue to be an inappropriate exercise of his discretion, especially given the factual overlap among Johnson's claim for asylum, statutory withholding of deportation, and withholding of deportation under CAT.9

IV.

The Board's ruling that the Immigration Judge did not have jurisdiction runs counter to its own dictates in Patel, which contemplates that, in most cases, the Immigration Judge will have broad jurisdiction over the case on remand. This reading of Patel finds additional support from the policy expressed by the Executive Office for Immigration Review in the Board of Immigration Appeals Practice Manual, which states: "Once a case has been remanded to the Immigration Judge, the only motion that can be entertained by the Board is a motion to reconsider the decision to remand. All other motions must be filed with the Immigration Judge." DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, BOARD OF IMMIGRATION APPEALS PRACTICE MANUAL S 5.2(a)(iii)(B) (Nov. 1, 1999). While the manual does not have the weight of a law or regulation and does not affect the Board's jurisdiction, see id. S 1.1(c), or our ruling, we note that the policy it expresses is consistent

9. The first two claims require a showing that Johnson's life or freedom would be threatened "on account of race, religion, nationality, membership in a particular social group, or political opinion," while CAT requires a showing that it is more likely than not that the alien would be tortured upon return to his or her country. Compare INA S 208, 8 U.S.C. S 1158, and former INA S 243(h), 8 U.S.C. S 1253(h) (1995) (current version at INA S 241(b)(3), 8 U.S.C.S 1231(B)(3)), with 8 C.F.R. S 208.16(c)(2). The INS itself has recognized the similarity of these types of claims in general: in the interim rule establishing procedures for CAT claims, it noted that the same application form is used for asylum, withholding of removal, and relief under CAT because in many cases "the underlying facts supporting these claims will be the same." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999).

13

with the jurisdictional view expressed by the BIA in Patel, and with the result we reach.

If the Board departs from Patel, it should provide a reasonable explanation for its departure. It is possible that it viewed the regulatory language (i.e.,"sole purpose") as effecting a limitation on jurisdiction, but that appears to run counter to the jurisdictional scheme reflected in Patel. The Board did not explain its departure and, therefore, its disregard of its own precedents was arbitrary. Because we view its ruling as a departure and because an agency should explain a departure, we will GRANT the petition for review, VACATE the Board's order, and REMAND for further consideration in light of this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14