

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2006

# Banea v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Banea v. Atty Gen USA" (2006). *2006 Decisions.* Paper 100.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/100

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-1308 and 05-2189
_____

NICOLAE BANEA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency No. A70 867 462)
Immigration Judge:  Charles M. Honeyman
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2006

Before:  RENDELL, VAN ANTWERPEN and COWEN, Circuit Judges

(Filed: December 14, 2006)
_____

OPINION OF THE COURT
_____

PER CURIAM

Nicolae Banea, a native and citizen of Romania, seeks review of a final order of

removal issued by the Board of Immigration Appeals ("BIA"or "Board").  We will deny

the petition for review.

I.

Spanning some twelve years, this case has a rather complicated procedural history. Banea attempted entry into this country as a stowaway on June 8, 1994 at Boston, Massachusetts and was immediately detained. Administrative Record ("A.R.") at 114, 708. Banea's applications for asylum and withholding of removal were denied by the District Director, and the Board of Immigration Appeals ("BIA") subsequently dismissed his appeal from the denial. Id. at 114. Banea then filed a habeas action in the United States District Court for the Eastern District of Pennsylvania and, in August 1996, the Court determined that Banea was entitled to an asylum hearing before an immigration judge ("IJ"). A.R. 723.

The hearing was conducted in Baltimore, Maryland in October of that year. Banea claimed persecution based on political opinion due to the perception that he was an informant for the former Romanian security agency in the 1980's. The IJ denied asylum and withholding of removal, A.R. 457, and the BIA affirmed, A.R. 335, 384. Banea did not file a petition for review from the BIA's order. Rather, he filed motions to reconsider and reopen, and both were denied by the BIA in May 1998. A.R. 662. Banea then filed a motion to reopen to apply for relief under Article 3 of the Convention Against Torture ("CAT" or "Convention"). A.R. 309. On September 30, 1999, the BIA granted the motion and remanded the matter to an IJ in Philadelphia, Pennsylvania. A.R. 302.

Because the BIA's remand order did not specifically retain jurisdiction on all issues but the CAT claim, the IJ found it appropriate to reconsider the asylum and

2

withholding applications based on changed circumstances. A.R. 122-23 (citing Johnson v. Ashcroft, 286 F.3d 696, 701-03 (3d Cir. 2002)). After hearing testimony, which was treated as credible, the IJ denied all relief in a on June 13, 2002.[1] A.R. 113-30. On January 11, 2005, the BIA summarily dismissed the appeal due to Banea's failure to file a brief on appeal. A.R. 48. Banea timely petitioned for review in No. 05-1308.

Banea also sought reconsideration before the Board. A.R. 9-46. Because Banea submitted documentary evidence that his brief was received by the Board prior to the filing deadline, the BIA granted reconsideration and vacated its January 11, 2005 decision. A.R. 1. In a reasoned decision, the BIA affirmed the IJ's decision denying Banea's CAT application and his renewed applications for asylum and withholding of removal. First, the BIA expressly held that the IJ correctly concluded that Banea had not established that it was more likely than not he would be tortured in Romania upon his return. A.R. 2. The Board then described the additional evidence presented in support of the asylum and withholding applications and found that the IJ properly weighed this evidence. A.R. 3. Finally, the Board agreed with the IJ's conclusion that the documentary evidence did not support, and even contradicted, Banea's claim that the security agency files were now publically available and would implicate him as an informer. Id. Banea timely filed a second petition for review, No. 05-2189, and the two

---

[1] Although the IJ questioned the veracity of portions of Banea's testimony, the IJ did not expressly make an adverse credibility finding. A.R. 124 at n.4.

petitions were consolidated for all purposes.[2]

II.

"[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004); see also Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir.2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate."). Our standard of review is narrow. We must sustain the removal order if there is substantial evidence in the record to support it. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). This is a deferential standard, and we will uphold the BIA's determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

To qualify for asylum, Banea must be unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The fear must be both subjective and "supported by objective evidence that persecution is a reasonable possibility." Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001) (citation omitted). To obtain withholding of removal, he must meet a higher standard and demonstrate a "clear probability" that his "life or freedom would be threatened" on the

---

[2] Banea's first petition for review, from the BIA's summary dismissal order, was rendered moot by the Board's vacatur of that order on reconsideration.

4

basis of the categories listed in the asylum statute. <u>Wang v. Gonzales</u>, 405 F.3d 134,139 (3d Cir. 2005); 8 U.S.C. § 1231(b)(3)(A). To obtain protection under the Convention, Banea must show it is more likely than not that he will be subjected to torture on removal. <u>Auguste v. Ridge</u>, 395 F.3d 123, 149 (3d Cir. 2005); <u>see also</u> 8 C.F.R. § 208.18(a)(1) (defining torture).

III.

Upon review of the record as a whole, we find that the agency's denial of asylum is supported by substantial evidence. Banea's asylum application stems from his agreement to be a secret informant for the Romanian government ruled by dictator Nicolae Ceausescu, who was overthrown and executed in 1989. According to Banea, he reached this agreement in exchange for permission to be a truck driver in Iraq. He was forcibly returned to Romania in 1987 after his authorized period in Iraq expired and, according to his testimony, Banea never learned or shared any information with government officials after his return. A.R. 147. He asserts, however, that he will be persecuted or tortured if returned to Romania by those who erroneously perceive him to be an informant for the former Ceausescu regime.

Both the IJ and the BIA properly rejected Banea's claim for relief for several reasons. As Banea's testimony demonstrated, A.R. 196-97, questioning and treatment by officials upon his return to Romania did not rise to the level of persecution. <u>See</u> <u>Chavarria v. Gonzalez</u>, 446 F.3d 508, 518 (3d Cir. 2006) (defining persecution as threats to life, confinement, torture, and economic restrictions so severe they are a threat to life or freedom) (citations

omitted).  Moreover, "we have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien."  Id.  Here, remarks and veiled threats by co-workers and acquaintances were not concrete and did not result in any violence to Banea.  A.R. 204-05.

Nor do the incidents recounted by Banea suggest that he would have a well-founded fear of persecution upon return to Romania.  Many years have passed; no evidence supports the notion that minor informants for the former regime are presently being persecuted or tortured.  And, as both the IJ and BIA remarked, the files, even if released publically, would exculpate Banea as, according to his own testimony, he refused to provide any incriminating evidence to authorities.[3]  Banea also testified that his wife wrote a letter in 1998 describing attacks that he believed were in retaliation for his role as a government informant.  A.R. 210-212.  Yet, Banea's wife and daughter live, work, and go to school in the same city without incident and have done so since 1999.  A.R. 233.

Given the deferential standard of review that governs, we will not disturb the agency's decisions.[4]

IV.

Based on the foregoing we will dismiss the petition for review docketed at No. 05-1308

---

[3]  As the IJ and BIA found, the 2001 Department of State Country Report for Human Rights and Practices in Romania indicates that an individual may only request access to his own file.  Subsequent Country Reports confirm this procedure.

[4]  Because we agree with the agency that Banea failed to satisfy the standard for asylum, as explained herein, he necessarily fails to meet the standard for statutory withholding of removal.  See Lukwago v. Ashcroft, 299 F.3d 157, 182 (3d Cir. 2003).  As to Banea's application for relief under the CAT, we find no evidence giving rise to a claim of torture.  See 8 C.F.R. § 208.16(c).

as moot and deny the petition for review docketed at No. 05-2189.