OPINION
PER CURIAM.
On December 28, 2004, an Immigration Judge (“IJ”) denied the application for asylum, withholding, and protection under the Convention Against Torture filed by Ramnarain Joeglal, his wife, Lelita, and their children, Randish and Rishi, through their former attorney, Jonathan Saint-Preux. The petitioners, citizens of Suriname who came to the United States in 1993, were granted voluntary departure. They did not appeal the IJ’s decision. However, six months later, on June 29, 2005, motions to reopen were submitted to the IJ. The IJ denied the motions in August and September 2005. An appeal to the Board of Immigration Appeals (“BIA”) followed; the BIA summarily affirmed the IJ’s decisions.
On June 5, 2008, the petitioners, through new counsel, Karamvir Dahiya, filed a motion to reopen and a request for a stay of removal with the BIA. That same day, the BIA granted a stay of removal to Ramna-rain and his son, Randish. Dahiya filed a supplement on July 10, 2008, but then the Joeglals, through another attorney, Darryl L. Wynn, filed another motion to reopen.
In the motion to reopen filed through Dahiya, the petitioners alleged that their former attorney, Saint-Preux, had provided ineffective assistance of counsel. They claimed that Saint-Preux filed an asylum claim for them after the IJ advised him to look into some sort of hardship relief, but he did not appear in court on the day of petitioners’ hearing. After the IJ and the petitioners waited for more than an hour, another attorney from Saint-Preux’s office appeared on his behalf. She had no knowledge of the petitioners’ claims. The IJ threatened that the petitioners would be deported unless they withdrew their asylum claim and sought voluntary departure. Without consulting with the petitioners, Saint-Preux’s substitute accepted voluntary departure on their behalf. The petitioners did not understand voluntary departure or its consequences. Meanwhile, Saint-Preux continued to charge them for his services and filed a labor certification on then- behalf. Without their knowledge, according to Dahiya, Saint-Preux filed the 2005 motions to reopen and *792 appeals with the BIA. Dahiya noted that Saint-Preux was serving a term of imprisonment for fraud and had been or would be disbarred. In the motion to reopen, the petitioners, through Dahiya, also argued that the IJ’s original order allowing voluntary departure did not properly inform the petitioners about the consequence of failing to depart so enforcing the order would violate their right to due process. They sought a new hearing.
In the supplement Dahiya filed for petitioners, he elaborated that the IJ threatened petitioners with jail if they did not accept voluntary departure. He modified the facts to note that Ramnarain Joeglal, through Saint-Preux, filed the June 29, 2005 motion to reopen. He repeated his claims of ineffective assistance of counsel and due process violations. Addressing a requirement of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), Dahiya conceded that the petitioners had not filed a complaint against Saint-Preux, but argued that there was no need to do so because Saint-Preux was already serving a sentence for his crimes and was disbarred and not subject to the imposition of sanctions. In light of Saint-Preux’s conduct, the petitioners asked to be excused from the time and number limitations on motions to reopen. In the supplement, the petitioners revealed the basis for their asylum claim. Conceding that their asylum application was “unprofessionally prepared and contains glaring omissions in the land of factual narratives what is customarily expected in a professionally prepared applications” [sic], the petitioners noted that it contained “the germ of a claim for political persecution,” namely “I was constantly threatened that if I did not work with the ruling party, I and my family would be burned out of my house.” They also pointed to this statement: “Because I refused to drive for them I was detained and questioned on numerous occasions until I left the country.” They also argued that the IJ was not neutral or impartial, and acted improperly in deciding the asylum claim was bogus before any argument was presented and in threatening that petitioners choose jail or the withdrawal of the asylum claim.
In the motion to reopen filed through Wynn, petitioners similarly asked to reopen the proceedings because of the ineffective assistance of Saint-Preux. They outlined their allegations against Saint-Preux: he arrived close to four hours late to Ramnarain Joeglal’s asylum interview, submitted documents late to the IJ, never appeared at the Joeglals’ hearing, sent a substitute who could not advise them and did not explain to them the meaning or consequences of voluntary departure, and provided the Joeglals with an incomplete application for temporary residence status for which they did not qualify. Wynn stated that the petitioners complied with Matter of Lozada by sending Saint-Preux a statement of his allegations of ineffective assistance of counsel and, after receiving no response, by filing a grievance complaint with the District Ethics Committee Secretary in Jersey City, New Jersey. The petitioners again asked that them case be reopened for a rehearing on their asylum claims.
On August 1, 2008, the BIA denied both motions as time — and number-barred and vacated the stays of removal. The BIA noted that the petitioners each presented second and third motions to reopen more than three and a half years after the final administrative decision. The BIA acknowledged that ineffective assistance of counsel can provide a basis for equitable tolling, but concluded that the petitioners had not been diligent in presenting the ineffectiveness claim. The BIA noted that the petitioners knew or should have known of Saint-Preux’s ineffectiveness on December 28, 2004, the date when he did not *793 appear for their merits hearing (his failure to appear being one reason the petitioners deemed Saint-Preux ineffective).
The BIA considered the petitioners’ arguments that they exercised due diligence, including contacting no fewer than eight attorneys and other legal service providers, plus various elected officials. However, the BIA noted that Ramnarain Joeglal submitted an affidavit with the Wynn motion to reopen in which Joeglal averred that he retained Dahiya in May 2007. Accordingly, the BIA calculated that even if the time limit were tolled until May 31, 2007 (the last date the Joeglals could have retained Dahiya consistent with the affidavit), the petitioners still failed to timely file their motion to reopen within 90 days or on or before August 29, 2007.
The BIA also considered whether the petitioners were alleging ineffective assistance against Dahiya (or any of the other legal providers they consulted), but rejected any such claim because they did not comply with the requirements of Matter of Lozada (and did not even identify some of the other attorneys they consulted).
The BIA also assessed whether the petitioners were trying to reapply for asylum but found that the petitioners did not submit any new application or evidence of changed circumstances in Suriname. To the extent that petitioners sought to have the BIA reopen their case sua sponte, the BIA was not persuaded that exceptional circumstances were present. The BIA also noted that Ramnarain Joeglal seemed to wish to reopen the proceedings to adjust his status based on a pending third-preference employment-based visa petition. Considering the August 2008 Visa Bulletin published by the State Department, the BIA stated that no visas were' currently available in Ramnarain Joeglal’s visa category. The BIA also noted that he had not included an application for an adjustment of status.
The petitioners now present a petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252. We review an order denying a motion to reopen under a highly deferential abuse of discretion standard. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir.2004); Nocon v. INS, 789 F.2d 1028, 1033 (3d Cir.1986). The BIA’s discretionary decision will not be disturbed unless it is arbitrary, irrational or contrary to law. See Guo, 386 F.3d at 562. In this ease, the petitioners are unable to show an abuse of discretion.
An alien faces number and time limitations on filing motions to reopen. Generally, an alien may file only one motion to reopen. See 8 U.S.C. § 1229a(c)(7)(A) (listing an exception not relevant here). Also, most motions to reopen must be filed no later than 90 days after the date of the final administrative decision. See 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2). The general time and number restrictions are subject to some exceptions, including the suspension of the time limit in some cases of changed country circumstances, where the evidence of changed circumstances “is material and was not available and could not have been discovered or presented at the previous hearing.” See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(h), Johnson v. Ashcroft, 286 F.3d 696, 704 (3d Cir.2002). The time limit, and perhaps the numerical limit, are subject to equitable tolling. See Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir.2005); Luntungan v. Attorney Gen. of the United States, 449 F.3d 551, 557 & n. 15 (3d Cir.2006).
The motions to reopen filed through Da-hiya and Wynn were the second and third such motions filed on the petitioners’ behalf. However, if it is assumed that Saint-Preux was not authorized to file a motion to reopen and the motion through Wynn is ignored, then perhaps the motion by Dahi- *794 ya could survive the number limitations on motions to reopen even without tolling.
However, even if the Dahiya-authored motion could be considered the petitioners’ first motion to reopen, the petitioners cannot show the diligence necessary to surmount the time bar. Although they argue to the contrary, they did not maintain a steadfast pursuit of their case. See Ghahremani v. Gonzales, 498 F.3d 993, 1000 (9th Cir.2007). It appears that the BIA did not abuse its discretion in concluding that the petitioners should have been on notice in 2004 that their attorney rendered ineffective assistance when he did not appear at their hearing and sent an ill-prepared substitute. Furthermore, as the BIA noted, even if the time limit were tolled until May 31, 2007, when Ramnarain Joeglal retained Dahiya, the petitioners did not file their motion within 90 days. It was not until June 5, 2008, when they were about to be removed, that the petitioners, through Dahiya, filed their motion to reopen. (Although the petitioners imply that Dahiya, too, may have been ineffective (see, e.g., Appellant’s Brief 25), they do not say so explicitly, and they retained Dahiya at an earlier stage of the proceedings before us.) Even if they did not discover Saint-Preux’s ineffectiveness until he went to jail in 2007, they still waited a minimum of five months (and possibly much longer) before filing the motion to reopen. For these reasons, the BIA did not err in concluding they did not exercise sufficient diligence in presenting their ineffectiveness claim to merit equitable tolling. See Borges, 402 F.3d at 407.
In short, the BIA’s decision was not arbitrary, irrational or contrary to law. Accordingly, we will deny the petition for review.