**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2287
_____

SAMUEL DEEMI,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-495-330)
Immigration Judge:  Daniel A. Morris

Argued on January 22, 2020

Before:  AMBRO, MATEY and ROTH, <u>Circuit Judges</u>

(Opinion filed: January 12, 2021)

Stephen L. Wohlgemuth                    (**ARGUED**)
Williams & Connolly
725 12th Street, N.W.
Washington, DC 20005

        Counsel for Petitioner

Victoria M. Braga                    (**ARGUED**)
Sunah Lee
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

—————

O P I N I O N[*]

—————

**ROTH**, Circuit Judge:

Samuel Deemi was convicted of second-degree sexual assault under New Jersey law for having sex with a patient formerly under his care at a mental health facility. On his release from prison, the Department of Homeland Security (DHS) sought to remove him to Liberia, his country of origin, on two grounds: under 8 U.S.C. § 1227(a)(1)(D)(i) as an alien whose conditional permanent residence was terminated and under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who was convicted of an aggravated felony. Deemi denied that he had committed an aggravated felony but conceded that he was removable based on the termination of his permanent residence. Deemi then applied for an adjustment of status and a waiver of inadmissibility. His application was denied by the Immigration Judge (IJ), and the Board of Immigration Appeals (BIA) dismissed his

—————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

appeal. For the reasons that follow, we hold that the BIA erred in categorizing Deemi's offense as a crime involving moral turpitude (CIMT) because the BIA failed to explain its departure from established precedent. We will vacate the BIA's removal order and remand this case for further proceedings on Deemi's petition for relief from removal under section 1227(a)(1)(D)(i).

## I. BACKGROUND AND PROCEDURAL HISTORY

Deemi is a native of Liberia. He entered the United States in 2000 as a nonimmigrant visitor and became a conditional permanent resident in 2007 after marrying a United States citizen. In 2002, he began working as a caregiver at the Arc of Hunterdon County, a mental health facility, where he was responsible for supervising higher-functioning patients. One of his patients was K.S., a woman with an I.Q. between 52 and 64 and the judgment level of a seven- or eight-year-old.[1] One night in February 2009, Deemi went to visit a friend at an apartment complex where the New Jersey Division of Developmental Disabilities had placed K.S. Deemi encountered K.S. there and recognized her from the time when she was under his care. He knew that she suffered from bipolar disorder. The two spoke and then had sex in Deemi's car.

The encounter had a profound effect on K.S. According to personnel at the Arc, K.S. was left "increasingly vulnerable," "endured an extreme amount of trauma" that would continue "for her lifetime," and has needed much ongoing "reeducation,

---

[1] *State v. Deemi*, No. A-1883-10T4, 2012 WL 685889, at *1 (N.J. Super. Ct. App. Div. Mar. 5, 2012).

counseling, [and] intense support."[2]  The encounter was also the basis for Deemi's

conviction in May 2010 for second-degree sexual assault under N.J. Stat. Ann. § 2C:14-

2c(2), which criminalizes any "act of sexual penetration with another person" who is

"detained in a hospital, prison or other institution" when the actor "has supervisory or

disciplinary power over the victim by virtue of the actor's legal, professional or

occupational status."[3]  He was sentenced to seven years in prison.

On Deemi's release from prison, he was served with the DHS Notice to Appear.

He applied for a waiver of inadmissibility under 8 U.S.C. § 1182(h) and an adjustment of

status under 8 U.S.C. § 1255(a).

The IJ denied Deemi's application in its entirety, concluding that Deemi had not

established exceptional and extremely unusual hardship.  Having thus determined that

Deemi's inadmissibility could not be waived, the IJ entered an order directing Deemi's

removal to Liberia.

The BIA largely affirmed the IJ's decision.  First, the BIA held that although

Deemi's conviction under § 2C:14-2c(2) could no longer qualify as an aggravated felony

after we declared 18 U.S.C. § 16(b)[4] to be unconstitutionally vague in *Baptiste v.*

*Attorney General*,[5] Deemi was still removable as an alien whose conditional residence

was terminated.  Second, the BIA held that sexual assault under § 2C:14-2c(2)

categorically constituted a CIMT because "the intentional sexual penetration of a victim,

---

[2] Administrative Record (AR) 401–02.
[3] *Id.* at 375.
[4] 18 U.S.C. § 16 defines a crime of violence.
[5] 841 F.3d 601, 621 (3d Cir. 2016).

who is a member of a vulnerable class the statute seeks to protect due to the unequal positions of power and inherent coerciveness of the situation, is inherently base and contrary to accepted rules of morality."[6] Thus, under 8 U.S.C. § 1182(a)(2)(A)(i)(I), Deemi was statutorily ineligible for adjustment of status. Third, the BIA held that Deemi's offense was "violent or dangerous" under 8 C.F.R. § 1212.7(d) because "the sexual assault of a vulnerable victim, who is at risk of suffering greater psychological harm than normal, is an exploitive and predatory act."[7] Finally, the BIA affirmed the IJ's discretionary denial of a waiver of inadmissibility to Deemi. It noted that "his family would suffer significant hardship if he were removed" after "[t]aking into account the country conditions of Liberia and the financial impact of [Deemi's] departure to his wife and children," but ultimately agreed with the IJ that Deemi could not meet "the heightened standard of exceptional and extremely unusual hardship."[8]

Having determined that Deemi was not entitled to a waiver of inadmissibility and an adjustment of status, the BIA dismissed his appeal. Deemi petitioned for review of that decision.

## II. DISCUSSION

We have jurisdiction over this timely petition for review of a final order of removal under 8 U.S.C. §§ 1252(a)(1) and 1252(b)(1). Although our jurisdiction only extends to final orders of removal and thus only to decisions of the BIA,[9] we also review

---

[6] AR 4–5 (internal quotation marks omitted).
[7] *Id.* at 5.
[8] *Id.* at 6.
[9] *Abdulai v. Ashcroft*, 239 F.3d 542, 548–49 (3d Cir. 2001).

the IJ's decision to the extent it is adopted, affirmed, or substantially relied upon by the BIA.[10]

The first issue we must address is whether sexual assault under § 2C:14-2c(2) is categorically a CIMT. This is a legal question that we review de novo.[11]

Whether sexual assault under § 2C:14-2c(2) is a CIMT is relevant in determining whether Deemi's waiver of inadmissibility under 8 U.S.C. § 1182(h) is permissible. We apply the categorical approach to determine whether a particular offense constitutes a CIMT.[12] The categorical approach requires that we first "ascertain the least culpable conduct hypothetically necessary to sustain a conviction" under the relevant statute and then ask whether that conduct is "morally turpitudinous;" in other words, whether it is "inherently base, vile, or depraved; [or] contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general."[13]

Section 2C:14-2c(2) provides that an actor is guilty of sexual assault if he "commits an act of sexual penetration with another person" when the other person "is on probation or parole, or is detained in a hospital, prison or other institution and the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal,

---

[10] *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011), *as amended* (Jan. 13, 2012); *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009), *as amended* (Nov. 4, 2009).
[11] *See Moreno v. Att'y Gen.*, 887 F.3d 160, 163 (3d Cir. 2018). While we ordinarily accord deference to the BIA's determination of whether a particular offense constitutes a CIMT, "such deference is not required where, as here, 'we are asked to review an unpublished, non-precedential decision issued by a single BIA member.'" *Id.* (citing *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014).
[12] *Moreno*, 887 F.3d at 163.
[13] *Id.* (internal quotation marks omitted).

professional or occupational status."  The victim is not required to be in custody to be considered "detained" under this section; it suffices that the victim is subject to rules and penalties imposed by a supervising authority.[14]  In addition, so long as the defendant has supervisory or disciplinary authority over the victim, conviction may be obtained even where force or coercion is absent.[15]  Consent is likewise irrelevant because detainees are deemed "legally incapable of giving knowing and free consent to proscribed sexual conduct with the supervisors" who hold power over them.[16]

Citing judicial interpretations of § 2C:14-2c(2), Deemi argues that the least culpable conduct hypothetically necessary to sustain a conviction under the section involves a defendant who has sexual intercourse with a willing adult without realizing or knowing that the willing adult is within his or her supervisory or disciplinary control. Deemi contends that this possibility distinguishes convictions under § 2C:14-2c(2) from CIMTs on two grounds.  First, CIMTs almost always involve an intent to harm someone; the "hallmark" of a CIMT is an appreciable level of consciousness or deliberation. Deemi believes, however, that the least culpable conduct under § 2C:14-2c(2) requires neither intent to harm nor knowledge of the victim's detainee status.[17]  Second, sexual offenses against children are generally considered CIMTs.  In contrast, he believes § 2C:14-2c(2) protects a class of persons that includes adults who are fully capable of

---

[14] *State v. Martin*, 561 A.2d 631, 635–36 (N.J. Super. Ct. App. Div. 1989).  At the time, § 2C:14-2c(2) was § 2C:14-2c(3).
[15] *State v. Spann*, 617 A.2d 247, 249 (N.J. 1993).
[16] *Martin*, 561 A.2d at 636–37.
[17] *Id.* at 16–20 (internal quotation marks omitted).

consenting to sexual relationships and not as "vulnerable" as children.

In holding that offenses under § 2C:14-2c(2) are categorically turpitudinous, the BIA compared them to offenses "such as statutory rape, sexual indecency with a minor, or incest" that have been considered turpitudinous "due to the inherent, vulnerable nature of the victim."[18]  The BIA reasoned that even though § 2C:14-2c(2) applies irrespective of whether there was proof of consent, "the intentional sexual penetration of a victim, who is a member of a vulnerable class the statute seeks to protect due to the 'unequal positions of power and inherent coerciveness of the situation,' is inherently base and contrary to accepted rules of morality."  Thus, a conviction under that section is categorically turpitudinous.[19]  While expressing no opinion on whether we agree with this ultimate conclusion, we hold that the BIA acted arbitrarily and capriciously in arriving at it without considering established precedent.

We begin with the observation that "[a]lthough an agency can change or adapt its policies, it acts arbitrarily if it departs from its established precedents without 'announcing a principled reason' for the departure."[20]  Here, the BIA was required to at least consider its own established precedent in *Matter of Silva-Trevino*.[21]  In *Silva-Trevino*, the BIA held that for an offense to constitute a CIMT, it must involve

---

[18] AR 4.

[19] *Id.* at 5.

[20] *Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002); *accord I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (holding that once an agency announces and follows a general policy, "an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion' within the meaning of the Administrative Procedure Act").

[21] 26 I. & N. Dec. 826 (BIA 2016).

"reprehensible conduct and a culpable mental state."[22]  That case concerned an alien who had pleaded no contest to a charge of indecency with a child under Tex. Penal Code Ann. § 21.11, which broadly criminalized sexual contact with anyone under the age of seventeen.  The BIA held that an offense under § 21.11 was not categorically turpitudinous because it "is broad enough to punish behavior that is not accompanied by the defendant's knowledge that the victim was a minor."[23]

The holding of *Silva-Trevino* is consistent with our reading in *Jean-Louis v. Attorney General* of the BIA's interpretation of moral turpitude.  There we declined to designate as a CIMT an offense that does not require knowledge of the victim's status.[24]  In *Jean-Louis*, we considered whether, under 18 Pa. Cons. Stat. § 2701(b)(2), simple assault against a child under twelve years of age was categorically turpitudinous.[25]  After concluding that § 2701(b)(2) "permits a conviction . . . where the defendant did not know that the victim was under 12 years old," we held that such an offense was not

---

[22] *Id.* at 834.
[23] *Id.* at 835.  Notably, the BIA in *Silva-Trevino* explicitly reserved the question of whether crimes like statutory rape, which the BIA considered to be "a distinct category of crimes that require the penetration of the child or similar conduct" without "requir[ing] a perpetrator to have knowledge of the age of the victim," constitute CIMTs.  *Id.* at 834 n.9.  In fact, the BIA did later have the opportunity to address whether § 2C:14-2c(2) categorically constitutes a CIMT when it decided *In Re Riaz Hussain Malik*, No. AXXX XX5 267, 2017 WL 8787251 (BIA Dec. 11, 2017).  There, the BIA, in an unpublished decision issued by a single board member, stated that a conviction under § 2C:14-2c(2) "does not require the lack of consent and would not necessarily constitute a crime involving moral turpitude because it could involve adults engaging in consensual activity."  *Id.* at *4.  While non-precedential, *Malik* is directly on-point.
[24] 582 F.3d 462 (3d Cir. 2009).
[25] *Id.* at 464.

categorically turpitudinous.[26]

In the present case, the BIA failed to consider the fact that § 2C:14-2c(2), as interpreted by New Jersey courts, apparently does not require the perpetrator to know the status of the victim. The BIA's decision thus ignores *Silva-Trevino*. If the BIA intends to depart from its own precedent, it should provide a reasonable explanation for its departure. Having failed to do so, it acted arbitrarily. We will not affirm such a decision.[27]

In order that the BIA may have the opportunity to review its holding on whether § 2C:14-2c(2) is a CIMT, taking into consideration its decision in *Silva-Trevino*, we will remand this case to the BIA for further proceedings consistent with this opinion.[28] Accordingly, we will grant the petition for review, vacate the BIA's removal order, and remand this case to the BIA.

---

[26] *Id.* at 468–69.

[27] *See Johnson*, 286 F.3d at 705.

[28] In view of the remand on the CIMT issue, it is not necessary for us at this time to consider whether Deemi's offense was "violent or dangerous" and/or whether waiver of inadmissibility is permissible in this case.